UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Mirapex Products Liability Litigation | 07-MD-1836 (MJD/FLN) |
| This document relates to: | |
| Brian Ridenour, | Civil No. 10-1132 (MJD/FLN) |
| Plaintiff, | |
| v. | **ORDER & REPORT AND RECOMMENDATION** |
| Boehringer Ingelheim Pharmaceuticals, Inc., et al., | |
| Defendants. | |

_____

Thomas M. Corea & Grant B. Stock for Plaintiff.
Scott A. Smith for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.
Steven J. Boranian & Joseph M. Price for Defendant Pfizer, Inc.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 25, 2011 on Defendants' Motion for Summary Judgment (ECF No. 30). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends the motion be **GRANTED** and the case be **DISMISSED with prejudice**.

## I.   FINDINGS OF FACT

Defendants manufacture pramiprexole, a prescription drug sold under the name "Mirapex," the use of which Plaintiff alleges is causally connected to compulsive behaviors such as gambling. Plaintiff generally claims he was defrauded when Defendants deceived the Food and Drug Administration ("FDA"), health care providers, and patients about Mirapex's safety and its capacity

1

to induce compulsive behavior. According to Plaintiff, Defendants had notice that Mirapex caused compulsive gambling at least as early as November 2004, but withheld this information from the FDA, doctors, and the public, and falsely denied any link between Mirapex and gambling.

The undisputed facts of this case are as follows. Plaintiff took Mirapex from 2002 to 2007 to treat symptoms of Restless Leg Syndrome. (*See* ECF No. 33, Ex. 3.) In December 2002, while living in Maryland, Jamal F. Ali, M.D. started Plaintiff "on a therapeutic trial of Mirapex." (ECF No. 33, Ex. 1.) In mid-2003, Plaintiff and his wife moved to Las Vegas, Nevada. (ECF No. 52, Ex. 20 ¶ 11.) That year, Plaintiff began filling his Mirapex prescription at a pharmacy in Las Vegas. (ECF No. 33, Ex. 5.) In June 2004, Plaintiff came under the care of William Gramlich, M.D., of Southwest Medical Associates in Las Vegas, who continued to treat Plaintiff with Mirapex until October 22, 2007. (*See* ECF No. 33, Exs. 2–5.)

Plaintiff alleges that, from 2003 to 2007, Mirapex caused him to engage in compulsive behavior, including compulsive drinking, sexual thoughts, and gambling. (ECF No. 33, Ex. 3.) Plaintiff claims that he first learned of a possible link between Mirapex and compulsive behavior in "approximately October of 2007" when he "viewed an advertisement on television discussing Mirapex and certain undesirable side effects." (ECF No. 52, Ex. 20 ¶ 17.) "At that time, and for the first time," Plaintiff "questioned if, perhaps, Mirapex could be associated with [his] unprecedented gambling compulsions and abnormal hypersexuality preoccupations." (ECF No. 52, Ex. 20 ¶ 17.) After seeing the television advertisement, Plaintiff informed Dr. Gramlich, at a visit on October 22, 2007, that he was experiencing side effects from Mirapex. (*See* ECF No. 33, Ex. 4.) On that date, Dr. Gramlich discontinued Plaintiff's Mirapex prescription and switched him to Requip for treatment of his Restless Leg Syndrome. (ECF No. 33, Ex. 4.)

Nearly two years later, on July 1, 2009, Plaintiff filed a Voluntary Petition for Chapter 7 bankruptcy in United States Bankruptcy Court for the District of Nevada. (ECF No. 33, Ex. 6.) In his petition, Plaintiff made no mention of any potential cause of action against Defendants as contingent or unliquidated claims. (*See* ECF No. 33, Ex. 6 at 15.) The bankruptcy court accepted Plaintiff's petition and discharged his debt on October 19, 2009. (ECF No. 33, Ex. 7.) Plaintiff claims that he "did not discover his legal injury until after he was prompted to research the cause of his compulsive gambling and sexual behavior by a personal injury attorney's television commercial sometime in October or November of 2009." (ECF No. 79, Am. Compl. ¶ 35.)

On March 8, 2010, Plaintiff filed the instant lawsuit in the Eastern District of Texas. (ECF No. 1, Compl.) He alleged product liability claims, including strict liability – design, manufacturing, and warning; express and implied warranty claims; negligence and negligence per se; negligent misrepresentation; and a violation of the Texas Deceptive Trade Practice Act. (Compl.) The action was then transferred to this Court on April 6, 2010 as part of the multi-district litigation. (ECF No. 6.) Plaintiff then amended his complaint on March 2, 2011 to eliminate the Texas Deceptive Trade Practice Act claim and allege additional violations of the Maryland Consumer Protection Act and the Nevada Deceptive Trade Practices Act. (Am. Compl. 19–23.) Defendants have now moved for summary judgment.

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

  **B.**  **Defendants Are Entitled to Summary Judgment in this Case Because the Applicable Limitations Period Has Expired.**

There is no dispute that the statutes of limitation that apply in the instant case are those of

the State of Nevada.[1] The parties further agree that the applicable limitations period is two years for all claims with the exception of Plaintiff's strict liability claim. Plaintiff asserts, however, that any limitations period began to run in October or November 2009, when Plaintiff claims he first discovered his legal injury. Meanwhile, Defendants assert that Plaintiff's claims accrued no later than October 2007, thus triggering the two-year statute of limitations at that time. Because the Court finds that the limitations period expired with respect to all of Plaintiff's claims before he filed the instant lawsuit on March 8, 2010, summary judgment is appropriate.

### 1. Plaintiff's claims accrued no later than October 2007.

The general rule governing statutes of limitation is that a cause of action accrues when a legal wrong occurs and a party sustains injuries for which relief may be sought. *Petersen v. Bruen,* 792 P.2d 18, 20 (Nev. 1990). An exception to this rule, however, is the so-called "discovery rule," which tolls a statutory period of limitation "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.* Thus, the Nevada statute of limitations governing personal injury actions is triggered when a patient discovers his legal injury. *Massey v. Litton*, 669 P.2d 248, 251 (Nev. 1983). Such "discovery" may be actual or presumptive and occurs when an "injured person knows or should know that he has suffered a legal injury." *Id.* The two-year limitations period "begins to run when the patient has before him facts which would put a reasonable

---

[1]Section 11.190(4)(e) of the Nevada Revised Statutes states: "Except as otherwise provided . . . , actions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced as follows: 4. Within 2 years: . . .
(e) Except as otherwise provided in NRS 11.215, an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another. The provisions of this paragraph relating to an action to recover damages for injuries to a person apply only to causes of action which accrue after March 20, 1951." N.R.S. § 11.190(4)(e).

Section 11.220 of the Nevada Revised Statutes states: "An action for relief, not hereinbefore provided for, must be commenced within 4 years after the cause of action shall have accrued." N.R.S. § 11.220.

person on inquiry notice of his possible cause of action . . . . The focus is on the patient's knowledge of or access to facts rather than on [his] discovery of legal theories." *Id.* at 251–52. Generally, the question of when a plaintiff "discovered or should have discovered the facts constituting a cause of action is one of fact." *Siragusa v. Brown*, 971 P.2d 801, 812 (Nev. 1999). Only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to his claims should such a determination be made as a matter of law. *Id.*

Here, Plaintiff claims that he "did not discover his legal injury until after he was prompted to research the cause of his compulsive gambling and sexual behavior by a personal injury attorney's television commercial sometime in October or November of 2009." (Am. Compl. ¶ 35.) The uncontroverted evidence demonstrates, however, that Plaintiff knew or should have known of the facts giving rise to his claims no later than October 2007. Plaintiff allegedly first experienced his compulsive behaviors after he started taking Mirapex in 2003. (ECF No. 33, Ex. 3.) In October 2007, by his own admission, Plaintiff saw a television advertisement noting a possible link between Mirapex and compulsive behaviors. (ECF No. 52, Ex. 20 ¶ 17.) Plaintiff then alerted his physician, on October 22, 2007, of his concern that he was experiencing side effects from Mirapex. (ECF No. 33, Ex. 4.) At that time, his physician discontinued Plaintiff's use of Mirapex and switched him to Requip. (ECF No. 33, Ex. 4.) Thus, no later than October 2007, Plaintiff had "before him facts which would put a reasonable person on inquiry notice of his possible cause of action" against Defendants.[2] *Massey*, 669 P.2d at 251. As such, his claims accrued no later than October 2007. Because Plaintiff did not file the instant lawsuit until March 8, 2010 (more than two years later), all of Plaintiff's claims, notwithstanding his strict products liability claim, are now barred by the

---

[2] It is irrelevant under Nevada law whether Plaintiff knew of a "conclusive relationship" between Mirapex and compulsive behaviors at that time.

6

applicable statute of limitations.

### 2. Nevada's two-year statute of limitations also applies to strict liability claims sounding in tort.

Defendants contend that a two-year limitations period also applies to Plaintiff's strict liability claim, while Plaintiff asserts that a four-year limitations period applies to that claim. Section 11.190(4)(e) of the Nevada Revised Statutes provides for a two-year limitations period for "an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another." N.R.S. § 11.190(4)(e). The Court finds support in *Campos v. New Direction Equipment Co.*, 2009 WL 114193 (D. Nev. 2009) and *Bender v. Clark Equipment Co.,* 897 P.2d 208 (Nev. 1995) for the conclusion that "a strict products liability claim falls within Nevada's two-year statute of limitations for personal injury actions." *Campos*, 2009 WL 114193 at *3. This court finds, therefore, that Plaintiff's strict products liability claim is subject to a two-year limitations period under Nevada law. Any strict liability claim accrued at the same time as the other claims asserted herein—no later than October 2007, as described above. Because Plaintiff did not file his complaint in this matter until March 8, 2010, his strict liability claim is also time barred.

Viewing the evidence in the light most favorable to Plaintiff, there appear to be no genuine issues of material fact as to the relevant dates at issue. The evidence in the record shows that all of Plaintiff's claims accrued no later than October 2007, at which time Plaintiff was, at a minimum, on inquiry notice of all potential causes of action against Defendants. There is nothing in the record to suggest that the television advertisement Plaintiff saw in 2009 imparted any additional information regarding the potential side effects of Mirapex than that which he saw in 2007. Thus, the applicable two-year limitations period began to run no later than October 2007 and expired no later than October 2009. Because Plaintiff failed to file his complaint within the time frame required

by Section 11.190(4)(e) of the Nevada Revised Statutes, all of his claims must be dismissed. Defendants are thus entitled to summary judgment.

## III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (ECF No. 30) be **GRANTED**;

2. This matter be **DISMISSED with prejudice**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY**.

## IV. ORDER

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the Joint Motion to Stay Discovery Pending the District Judge's Ruling on Defendants' Motion for Summary Judgment (ECF No. 104) is **DENIED**.

DATED: June 5, 2011                         *s/ Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 20, 2011**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 20, 2011** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.