UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: MIRAPEX PRODUCTS LIABILITY LITIGATION | MDL No. 07-1836-MJD-FLN |
| *This document relates to:* | Civil No.: 10-cv-1132-MJD-FLN |
| BRIAN RIDENOUR, | |
| Plaintiff, | **PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE FRANKLIN L. NOEL'S REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; PFIZER INC., a Delaware corporation; PHARMACIA CORPORATION, a Delaware corporation; and PHARMACIA & UPJOHN COMPANY LLC, | |
| Defendants. | |

## I.
### INTRODUCTION & SUMMARY OF OBJECTIONS

The Magistrate Judge Noel's Report and Recommendation recommends that Plaintiff's claims be time-barred as Plaintiff did not file suit against Defendants until March 8, 2010 pursuant to (a) a finding that Plaintiff discovered his injuries in October 2007 and, (b) an application of a two-year limitations period to all of Plaintiff's causes of action. Plaintiff objects to the Report and Recommendations for three reasons.

First, not only does a question of material fact exist as to the date that Plaintiff discovered his injuries, but Plaintiff proffered evidence which conclusively establishes that Plaintiff did not discover his injuries until October or November 2009. Second, the Report and Recommendation incorrectly applies a two-year limitations period to all of Plaintiff's causes of action, while certain of them are actually governed by either a three or four-year statute of limitations. Finally, the Report and Recommendation erroneously applied a two-year limitations period to Plaintiff's defective pharmaceutical products liability claim, despite the fact that Nevada law mandates a plaintiff be allowed four years to file a lawsuit that concerns a defective pharmaceutical products liability claim.

## II.
### PROCEDURAL HISTORY

On March 8, 2010, Ridenour filed suit against the Defendants seeking damages for his injuries that were caused by Mirapex, a defective pharmaceutical manufactured, marketed, and sold by Defendants.[1] Included in Ridenour's original Complaint were causes of actions for strict products liability, breaches of express and implied warranties, negligence, negligence per se, negligent misrepresentation and violations of the Texas Deceptive Trade Practices Act.[2]

Defendants moved the Court for an order granting summary judgment against all of Plaintiff's claims.[3] Since, at that point, material discovery had yet to commence, Plaintiff requested[4] and received[5] a continuance of the summary judgment hearing. In

---

[1] Complaint (Dkt. No. 1).
[2] *Id.*
[3] Defendants' Motion for Summary Judgment (Dkt. No. 30).
[4] Plaintiff's Rule 56(f) Motion for Continuance (Dkt. No. 45).

addition, Plaintiff requested leave from the Court to amend his complaint to add claims for violations of the Maryland Consumer Protection Act and the Nevada Deceptive Trade Practices Act based on allegations concerning Defendants' deceptive and fraudulent concealment of Mirapex's harmful side effects.[6] The Court granted Ridenour leave to file his amended complaint.[7] Thereafter, Ridenour filed a response to Defendants' Motion for Summary Judgment.[8]

On June 6, 2011, United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation recommending that all of Plaintiff's claims be dismissed with prejudice pursuant to a finding that Ridenour's claims accrued no later than October 2007 and, therefore barred by a two-year statute of limitations.[9]

## III.
### ARGUMENT AND AUTHORITIES

**A. Question of Material Facts Exists as to the Date Ridenour's Claims Accrued**

Magistrate Judge Noel's recommendation for the dismissal of Ridenour's claims is entirely based on a finding that Ridenour discovered his injuries "no later than October 2007."[10] However, that finding is unsupported by sufficient uncontroverted evidence for the same to be made as a matter of law. Moreover, Ridenour proffered evidence that unequivocally proves that he did not discover his legal injuries until October or November 2009.

---

[5] Order (Dkt. No. 69).
[6] Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. No. 41).
[7] Order (Dkt. No. 69).
[8] Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 80).
[9] Order (Dkt. No. 69), p. 7.
[10] *Id.*

Defendants' only summary judgment evidence is that, on October 22, 2007, Ridenour made a passing question to Dr. William Gramlich, his general practitioner, for which he was visiting for a routine checkup, concerning whether his Mirapex use was causing compulsive side effects.[11]  That question was prompted by a television advertisement Ridenour had seen regarding the same.[12]  However, in response to Ridenour's question, Ridenour's doctor immediately and unequivocally stated that there was no clear link between Mirapex and Ridenour's complained of behaviors.

The medical records for that office visit, which Dr. Gramlich testified were an accurate representation of "the communications both to and from Mr. Ridenour on that day,"[13] state:

> "**Patient in for follow-up.  Says he is having side effects from the Mirapex.  All sorts of compulsive behavior – <u>Not at all clear this is related</u>, but will dc the Mirapex for RLS and switch to requip**."[14]

Dr. Gramlich further testified at his deposition: "I think I told [Ridenour] I didn't know the symptoms that he was having were actually related to Mirapex."[15]  Moreover, Ridenour testified that Dr. Gramlich advised him that there was no link between Mirapex and Ridenour's compulsive behaviors.[16]

---

[11] *Id.*, p. 6.
[12] *Id.*
[13] Gramlich Dep. 40:11-21.
[14] Gramlich Dep. 27:8-22, Exhibit 2 (emphasis added); *see* Defendants' Motion for Summary Judgment, Exhibit 4.
[15] Gramlich Dep. 32:11-19.
[16] Ridenour Aff. ¶18.

Thus, Ridenour had concerns about Mirapex and Dr. Gramlich, who had been Ridenour's general practitioner since June 9, 2004[17] and clearly was in a position of medical authority, advised him that he did not think it clear, "at all," that there was such a relationship. At best, this evidence shows that Ridenour was suspicious of Mirapex, but, clearly, his suspicions were allayed by his doctor.

This is insufficient to confer summary judgment under Nevada and Federal law. Dismissal on statute of limitations grounds is only appropriate "when **uncontroverted** evidence **irrefutably** demonstrates that the plaintiff discovered or should have discovered" the facts giving rise to the cause of action.[18] As held by the Nevada Supreme Court, the critical inquiry is whether the plaintiff "discovered or should have discovered facts that identified a **<u>conclusive</u>** relationship between her injuries and the defendant's allegedly defective product."[19]

In *Massey v. Litton*,[20] the Nevada Supreme Court proclaimed that, for discovery rule purposes, the term "injury" means "legal injury," which encompasses the discovery of both the injury and the cause of that injury.[21] As the Nevada Supreme Court stated, the entire purpose of the discovery rule is so the plaintiff can discover the cause of his

---

[17] Gramlich Dep. 14:10-21.
[18] *Nevada Power Co. v. Monsanto Co.,* 955 F.2d 1304, 1307 (9th Cir. 1992) (emphasis added); *Siragusa v. Brown*, 971 P.2d 801, 812 (Nev. 1998).
[19] *Siragusa*, 971 P.2d at 812.
[20] 669 P.2d 248 (Nev. 1983).
[21] *Id*. at 251.

injuries.[22]  The mere possibility that a product could be the cause of a plaintiff's injury is not sufficient to start the statute running.[23]

Here, even if Ridenour suspected in 2007 that Mirapex caused his compulsive behaviors, he did not discover that those side effects were actually an injury caused by Defendants' negligence until late 2009.  In November 2009, Ridenour viewed a television advertisement by a law firm that detailed how Mirapex, in fact, could cause compulsive gambling and hypersexuality.[24]  Still unsure, he contacted law firms to determine if such could possibly be investigated.[25]  Through that process he learnt, for the first time that Mirapex was the cause of his compulsive behaviors.[26]  The difference between the advertisements in 2009 from the advertisement in 2007 was that the 2009 advertisement specifically described the causal link between Mirapex and compulsive behaviors.  At this point, Ridenour understood that his injuries were not random or unexplainable, but actually caused by the Defendants.

More than a suspicion that there might be a relationship between Mirapex and obsessive behaviors that is required for a cause of action to accrue.  A plaintiff must have or should have discovered "all facts" material to the cause of action.  In this case, Ridenour was unable to allege a concrete injury traceable to the Defendants until late 2009.[27]

---

[22] *Id.*
[23] *Id.*
[24] *Id.* ¶25.
[25] *Id.*
[26] *Id.*
[27] *Id.*

6

B. **Not All of Ridenour's Claims are Governed by a Two-Year Limitations Period and Therefore Those Claims Should Not Have Been Dismissed**

Plaintiff objects to the overly broad misapplication of a two year statute of limitations period to his claims that are limited by a longer period of time. More specifically, Ridenour's claims against Defendants for violations of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. 598.0903, *et seq*. are governed by a four year limitations period.[28] Ridenour's UCC express and implied warranty claims must be brought within four years of the date his claims accrued as well.[29] In addition, Ridenour's negligence per se claims (pursuant to violations of 21 U.S.C. §§ 331 and 352 and violations of 21 C.F.R. §§ 201.56, 201.57, and 202.1) against the Defendants are limited by a three-year limitations period.[30] Finally, Ridenour's claims against the Defendants for violations of the Maryland Consumer Protection Act, Md. Code, Commercial Law, § 13-101, *et seq*. are governed by a three year limitations period.[31]

Therefore, at worst, even if the Court finds that Ridenour discovered his injuries in October 2007, Ridenour's claims concerning the Nevada Deceptive Trade Practices Act and Defendants' breaches of their express and implied warranties could have been brought up until October 2011. Ridenour's negligence per se and Maryland Consumer Protection Act claims could have been brought until October 2010.

Defendants argued in their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment that Ridenour's claims boil down to a claim for personal injuries

---

[28] Nev. Rev. Stat. 11.190(2)(d).
[29] Nev. Rev. Stat. 11.22.
[30] Nev. Rev. Stat. 11.190(3)(a).
[31] Md. Code, Courts and Judicial Proceedings, § 5-101.

and therefore should be time-barred (assuming a finding that Ridenour discovery his injuries in October 2007 – which he did not) pursuant to the two year limitations period contained within Nev. Rev. Stat. § 11.190(4)(e).[32]  However, Defendants myopically misconstrue Plaintiff's claims.  Ridenour's claims do not simply allege an injury caused by a defective pharmaceutical, but also encompass a trail of deceptive and fraudulent conduct that equate to violations of Nevada and Maryland's respective consumer protection statutes.  This deceptive conduct, which Plaintiff seeks damages for, is not encompassed by Plaintiff's products liability or negligence claims.

Defendants' argument that all of Ridenour's claims should be governed by a two year limitations period is entirely supported by a misapplication of *Campos v. New Direction Equipment Co., Inc.*[33] and *Blotzke v. Christmas Tree, Inc.*[34]  *Campos* and *Blotzke* both involved plaintiffs alleging personal injuries through multiple causes of action that had various limitation periods, and both courts ruled that the claims were really just claims for personally injuries and, therefore, all claims should be governed by a two-year limitations period.   However, *Campos* and *Blotzke* are distinguishable.  The injuries in *Campos* and *Blotzk*e were immediate and obvious and their causes of action did not include violations of a consumer protection acts based on the deceptive acts of their respective defendants.

Here, Ridenour's lawsuit has two purposes.  The first is to recover damages caused by a defective pharmaceutical made and sold by the Defendants.  The second is to

---

[32] Reply in Support of Defendant's Motion for Summary Judgment (Dkt. No. 83), p. 24.
[33] *Campos v. New Direction Equipment Co., Inc.*, No. 2:08–CV–00286–LRH–RJJ, 2009 WL 114193, at *1 (D. Nev. January 16, 2009)
[34] *Blotzke v. Christmas Tree, Inc.*, 499 P.2d 647, 647 (Nev. 1972).

8

recover damages caused by Defendants' deception, which caused Ridenour initial and, thereafter, continual use of Mirapex. A Court must look to the "real purpose" of a complaint to determine which cause of action to apply.[35] Moreover, if this Court finds that more than one limitations period is applicable, the longer period should govern.[36]

In support of his second purpose, Ridenour provided evidence to support his allegation that Defendants engaged in a campaign to deny any sort of causal relationship between Mirapex and compulsive behaviors and to hide from the public, the government, and the medical community, the harm that Mirapex could cause.

Below is a portion of a table of evidence provided by Ridenour in Plaintiff's Response to Defendant's Motion for Summary Judgment, which outlines the deception of the Defendants. The exhibit letters refer to the exhibits of Plaintiff's Response to Defendant's Motion for Summary Judgment.

| **Summary** | **Document Description** | **Exhibit Letter** |
|---|---|---|
| **2000**: Pfizer label "non-serious," and therefore subsequently void from the above database of reports, a June 2000 abstract by Drs. Stacy and Samanta observing that patients exhibited "a gambling compulsion severe enough to cause financial hardship." This information is withheld from the FDA. | 06/2000 abstract of findings by Dr. Stacy of 7 patients on Mirapex; 7/6/2007 Deposition of Olga Castro-Manrique, Pfizer, p. 184, Lines 3-18. | "7" |
| **August 2003**: Pfizer internal e-mails identify a | 8/5/2003 Pfizer internal | "8" |

---

[35] *Hartford Ins. Group v. Statewide Appliances, Inc.*, 484 P.2d 569, 571 (Nev. 1971).
[36] *Gillette Dairy, Inc. v. Mallard Mfg. Corp.*, 707 F.2d 351, 353 (8th Cir. 1983) ("Under Nebraska law, if two conflicting statutes of limitation are equally applicable, longer period should govern."); *Guam Scottish Rite Bodies v. Flores*, 486 F.2d 748, 750 (9th Cir. 1973) ("The trial judge ruled that where there is a 'substantial question' over which of two conflicting statutes of limitation, to apply, the court should as a matter of policy apply the longer.").

| | | |
|---|---|---|
| plan to locate key opinion leaders who disagree with the association of Mirapex and gambling, and to promote them in order to lull the public into believing that there is no association between Mirapex and gambling. | emails. | |
| **August 2003**: Pfizer receives information from a doctor who conducted two Internet-based studies in which 20% and 23% of patients taking Mirapex reporting compulsive gambling/shopping. Pfizer hides these reports from the FDA by mislabeling them "media reports." | 7/6/2007 Deposition of Olga Castro-Manrique, Pfizer, p. 244-46; 7/12/07 Deposition of Kirk Taylor, Pfizer, p. 149, Lines 13-16. | "9" |
| **June 2004**: Ann Corbin and Dr. Mary O'Connell, of BIPI, reference as "good news" the fact that a doctor, who had patients reporting compulsive behavior on Mirapex, would not publish her data any time soon. | 6/10/2004 and 6/14/2004 BIPI internal emails. | "10" |
| **September 2004**: BIPI Germany finds "a clear pharmacodynamic effect" of Mirapex on pathological gambling, and changes their label to reflect this. BIPI America does not. | 2004 BIPI Germany report about compulsive gambling and label change. | "11" |
| **November 2004**: BIPI makes clear in news segment media that: "There is no evidence of a causal effect between pramipexole and compulsive behavior such as gambling" and "In the trials where we determined the safety and effectiveness of the drug, there were no cases of compulsive behavior." | 12/05/2004 BIPI internal email. | "12" |
| **November 2004**: BIPI instructs its people to conceal, from concerned consumers who call in about Mirapex, the fact that other compulsive behaviors, such as hypersexuality, have been reported, and, only if *probed*, reveal reports of compulsive sexual behavior. | Issue Management following CBS segment on Mirapex and compulsive gambling. | "13" |
| **December 2004**: BIPI Germany determines that there <u>is</u> indication for a causal relationship between Mirapex and compulsive gambling. | 12/16/2004 email from Dr. Ralf Zerban, BIPI Germany, to Dr. Christopher Corsico. | "14" |
| **February 10, 2005**: A news segment details how a patient on Mirapex developed compulsive eating and gambling. In response, and to the public at large, BIPI conceals the multitude of reports they have received to the contrary, and declares that: "There is no scientific evidence of a causal effect between pramipexole and compulsive behavior." | 2/10/2005 transcript of news segment. | "15" |

10

| | | |
|---|---|---|
| **July 2005**: BIPI professes that: "There's not yet scientific evidence of a causal effect between a specific product and this behavior." | 7/12/2005 news article about Mayo Clinic doctors with patients on Mirapex who developed compulsive gambling. | "16" |
| BIPI and Pfizer instruct their agents, when a caller calls in and questions about compulsive behaviors, to neutralize the concern and influence with the off-setting benefits of Mirapex, thus attempting to distract the caller from any concerns over compulsive behaviors. | Mirapex Objection Handler. | "17" |

This evidence establishes causes of action that are much more involved than an injury caused by a defective pharmaceutical. Moreover, Ridenour's Maryland Consumer Protection Act claim should be governed by Maryland's three-year statute, not Nevada's two year statute, for an additional reason. The Nevada Supreme Court ruled, in *Gen. Motors Corp. v. Eighth Judicial Dist. Court of Nev.* that "the rights and liabilities of the parties are governed by the local law of the state where the injury occurred…."[37] Here, Ridenour is complaining of injuries he suffered in both Nevada and Maryland[38], therefore, his injuries suffered in Maryland and Defendants' actions in Maryland should be governed by Maryland's three-year limitations period contained within Md. Code, Courts and Judicial Proceedings, § 5-101.

### C. Nevada Allows a Plaintiff Four Years to Bring Suit for a Defective Pharmaceutical

Even if the Court finds that Ridenour discovered his injuries in October 2007, Ridenour's product liability claims should still survive because such actions, under

---
[37] 134 P.3d 111, 116 (Nev.2006).
[38] First Amended Complaint (Dkt. No. 79). p. 7.

Nevada law, are governed by Nevada Revised Statute 11.220, which states that "[a]n action for relief, not hereinbefore provided for, must be commenced within 4 years after the cause of action shall have accrued." Because the Nevada Revised Statutes do not provide an action for relief specifically for a drug products liability case, the statute of limitations here is 4 years.

This application of a four year limitations period to drug product liability claims is supported by Nevada law. In F*isher v. Professional Compounding Centers of America, Inc.,*[39] the Court dealt with a plaintiff who was harmed by the drug fen/phen; however, the plaintiff was not able to link the harm to the drug until years after the harm manifested. *Fisher* held that, in such a drug product liability case, the two year statute of limitations of N.R.S. 11.190(4)(e) was inapplicable[40]

The Magistrate Judge's application for a two-year limitations period to product liability claims was inappropriate because it was based on *Campos v. New Direction Equip. Co., Inc.*[41] and *Bender v. Clark Equipment Co.*[42] *Campos* and *Bender* are distinguishable from the facts here because both dealt with plaintiffs who were injured by a machine and whose injuries were obvious. More importantly, in *Campos* and *Bender* the link between the injury and product was immediately apparent.

*Fisher* is more analogous to the facts and circumstances surrounding Ridenour's product liability claims than either *Campos* or *Bender*. Therefore, the Magistrate Judge

---

[39] 311 F. Supp 2d 1008, 1017 (D. Nev. 2004).
[40] *Id.*
[41] No. 2:08–CV–00286–LRH–RJJ, 2009 WL 114193, at *2-3 (D. Nev. 2009).
[42] 897 P.2d 208 (Nev. 1995.)

should have applied a four-year limitations period to Ridenour's product liability claims as is required by Nevada law.

## IV.
## CONCLUSION

For the reasons stated herein, Plaintiff, Brian Ridenour, respectfully requests that this Court review the relevant facts and issues *de novo*, sustain Ridenour's objections, and deny Defendants' Motion for Summary Judgment.

Dated: June 20, 2011

/s/ Thomas M. Corea
Thomas M. Corea
Texas Bar Number 24037906
Attorneys for Plaintiff Brian Ridenour
The Corea Firm, PLLC
1201 Elm Street, Suite 4150
Dallas, Texas 75270
Telephone: (214) 953-3900
Facsimile: (214) 953-3901